UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EVERT JEROME THOMPSON,** | Civil Action No. 12-1312 |
| **Plaintiff,** | |
| v. | OPINION |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**WOLFSON, United States District Judge:**

This matter is presently before the Court on a Petition to Vacate, Set Aside or Correct Sentence ("Petition") filed by *pro se* Petitioner Evert Jerome Thompson ("Petitioner") pursuant to 28 U.S.C. § 2255, challenging his 150–month sentence imposed for armed robbery and a related weapons offense. Pursuant to Fed. R. Civ. P. 78, upon review of all submissions, this matter is decided without oral argument, and for the reasons stated below, the Court dismisses the Petition with prejudice and denies a certificate of appealability.

### I.     FACTUAL BACKGROUND

The Court recounts only the factual background relevant to Petitioner's petition for relief. Petitioner is a federal prisoner currently incarcerated at United States Penitentiary, Atlanta, Georgia. Petitioner was tried before a jury by the Honorable Joel A. Pisano, U.S.D.J., and was found guilty of armed robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), as well as using and/or carrying a firearm during a crime of violence as proscribed by 18 U.S.C. § 924(c)(1)(A)(ii). [1]

The relevant facts surrounding Petitioner's crimes are succinctly stated in the Third

---

[1] The case was reassigned to me on March 10, 2015 after Judge Pisano's retirement.

Circuit's decision denying Petitioner's direct appeal:

> On September 9, 2008, two persons robbed a Bank of America located in Iselin, New Jersey, with a Colt .357 revolver. After fleeing the bank in a stolen black BMW, the two men abandoned the car and entered into a tan Chevrolet Astro minivan. Unbeknownst to the robbers, one of the stolen sacks of money contained a GPS tracking device. The GPS device permitted police officers to monitor the stolen money's latitude, longitude, direction, and speed.[2]
>
> Relying upon transmissions from the GPS device, Detectives Mark Zeno, Michael Ng, and Walter Bukowski of the Woodbridge Township Police Department drove in an unmarked car to an intersection where they expected to intercept the black BMW. Rather than seeing a black BMW, the detectives observed a tan Astro minivan traveling the same coordinates as those provided by the GPS system. Consequently, the detectives proceeded to follow the minivan. Sergeant Christian Ladaudio of the Woodland Township Police Department's Special Investigations Unit also responded in an unmarked black pickup truck. The minivan, realizing that it was being followed, accelerated to high speeds, triggering the detectives in the unmarked car to activate its emergency lights. A high speed chase ensued and concluded with a collision between the minivan and another vehicle.
>
> The driver exited the damaged minivan and fled the scene on foot. Sergeant Ladaudio pursued the driver with his vehicle. When the fleeing suspect jumped a guardrail, Ladaudio took up the chase on foot. Detective Ng also pursued the suspect on foot. Sergeant Ladaudio tackled the driver, who turned out to be Thompson, and Ng assisted in putting on the handcuffs and effectuating the arrest. Meanwhile, back at the scene of the accident, the passenger in the minivan, Sharron Graham, was arrested. Inside the minivan, police officers recovered a white plastic bag containing $31,007.98 in cash—the exact amount stolen from the bank. Also, police officers found attire that was worn at the robbery, a loaded Colt .357, a Radio Shack police scanner, the car key to the BMW, and the GPS tracking device.
>
> After Graham pleaded guilty to the armed bank robbery, a superseding indictment was returned against Thompson, charging him with armed bank robbery and using and/or carrying a firearm during a crime of violence. Prior to trial, Petitioner moved to suppress evidence gathered as a result of his arrest and search of

---

[2] It is undisputed that Petitioner was apprehended shortly after the robbery. (*See* Pet. Reply at 6-7 (stating that Petitioner was found by police fifteen minutes after the bank robbery).)

> the minivan. The motion was denied without a hearing. After a three-day jury trial, Thompson was found guilty on both counts A jury found Petitioner guilty of both armed robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), as well as using and/or carrying a firearm during a crime of violence as proscribed by 18 U.S.C. § 924(c)(1)(A)(ii).

*U.S. v. Thompson*, 393 Fed. App'x. 852, 854 (3d Cir. Sept. 13, 2010).

Although the government admittedly had no eyewitnesses placing Petitioner in the bank or in the original getaway car, it offered expert testimony at trial that identified Petitioner as the source of DNA recovered from items worn by one of the robbers, including a hat and mask. (Crim. No. 08-674, No. 58, Trial Test. of Nicole Nicklow, 335:1-368:25). The government also presented evidence that the shoes worn by Petitioner at the time of his arrest corresponded to the design, size, and condition of the footprint impressions lifted from the bank counter, though the expert could not conclusively determine that Petitioner's shoe made the print on the counter. (*Id.* at No. 57, Trial Test. of Michael Scimeca, 253:1-268:12; Trial Test. Michael Smith, 269:1-298:24.) [3]

At sentencing on October 21, 2009, Petitioner's counsel argued for downward departures based on U.S.S.G. 5H1.5, employment record, and U.S.S.G. 5H.6, family ties and responsibilities. (Oct. 21, 2009 Sen. Tr. 21:20-24:19.) Counsel additionally argued for the Court to impose the statutory minimum, primarily emphasizing the same factors, *i.e.*, his steady employment and family ties and responsibilities, as well as his lack of any prior criminal record. (*Id.* at 25:9-27:16.) The Court rejected counsel's arguments for specific downward departures, and in assessing the §3553(a) factors the Court noted the following:

---

[3] The Court notes that the government failed to append portions of the trial transcripts and exhibits on which it relies in its brief and did not cite to the particular docket entries or pages in its citations (see No. 10, R. Br. at 7), leaving the Court to locate the transcripts in order to evaluate the government's arguments.

> By the way, I have been doing this for a long time and I have been around criminal cases for a lot longer than that and I tell you, I have never seen more evidence against a defendant in any case than what I saw in this case. I have never seen more overwhelming evidence of guilt than what was presented in this matter. . . .

*Id.* at 32:14-19.  The Court then imposed a mid-range term of 66 months on the first count and the mandatory minimum sentence of 84 months on the second count, for a total of 150 months. (*Id.* at 36:6-20.)

Petitioner filed the instant habeas petition on March 2, 2012, alleging only ineffective assistance of counsel at sentencing.  (No. 1.)  Before the government filed its answer, Petitioner sought leave and filed a supplemental petition, which included an additional claim of ineffective assistance of counsel at trial and on appeal (*see* Nos. 2-3; 5-6).  The Court advised Petitioner pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), that he must include all claims for relief in an all-inclusive petition (No. 8), and Petitioner responded by letter that he "wishe[d] to have his pleading ruled upon as filed." (No. 9).  The government subsequently filed its answer (10), and Petitioner filed his Reply.  (No. 11.)  The issues are now fully briefed and ripe for decision.

### III.   ANALYSIS

Petitioner alleges two grounds for relief in his amended petition.  (No. 5.)  Specifically, he contends that his counsel was deficient (1) for failing to sufficiently argue a "reasonable doubt defense" by stressing the lack of direct evidence against him and (2) for failing to argue for the statutory minimum and for various downward departures to reduce Petitioner's sentence.  I address each ground separately.

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

4

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In order to sustain an ineffective assistance of counsel claim, Petitioner must establish: (1) deficient performance, and (2) resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims. The first part of the *Strickland* test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052 (internal citations omitted). The second part requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Third Circuit has "reasoned that 'there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" *U.S. v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

**A. Failure to Argue for a "Reasonable Doubt Defense"**

In his amended petition, Petitioner contends that "defense counsel was ineffective at trial and on appeal for not adequately arguing a reasonable doubt defense."[4] (Am. Pet. at 23.) Although he acknowledges the "massive amounts of circumstantial evidence" introduced by the

---

[4] Petitioner's headings have been unbolded to improve readability.

government (*id.* at 25), Petitioner contends that the government never produced "concrete evidence," such as eyewitness identification, DNA evidence, or fingerprints, that conclusively placed Petitioner in the bank during the robbery or in the black BMW (the original getaway vehicle). (*Id.* at 23-26.) Petitioner further contends that even though the stolen money and items used during the robbery were recovered from the vehicle from which Petitioner fled, that evidence does not conclusively establish that Petitioner robbed the bank and that this evidence proves only that Petitioner "was found in proximity to the stolen bank money at the time of his arrest." (*Id.*) According to Petitioner, defense counsel permitted the government to introduce an array of circumstantial evidence without rebuttal and instead focused on issues unrelated to his defense, such as potential police brutality arising from Petitioner's arrest. (*Id.* at 25.) Finally, he asserts that counsel's performance was deficient because "the weightier evidence" suggested that an individual other than Petitioner committed the robbery (*Id.* at 23), but Petitioner's petition is devoid of any factual description or details about that alleged evidence. In response, the government contends that the evidence against petitioner, albeit circumstantial, was overwhelming and was more than sufficient to sustain his conviction.

    In considering the instant petition, this Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (citing *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989). A petitioner raising an issue regarding the effectiveness of his attorney must, however, allege specific facts in support of his claim. A petition for 2255 relief cannot rest upon vague and conclusory allegations. *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations are insufficient for a section 2255 petition); *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir.2008). *See also* Rule 2(b)(2)

of the rules governing section 2255 proceedings ("[t]he motion must ... "state the facts supporting each ground" for relief). A district court may dispose of such allegations without further investigation. *Thomas*, 221 F.3d at 437. It might also consider an amendment that supplies the necessary specificity. *Id.* at 436; *see also Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987) ("[B]ald assertions and conclusory allegations" are insufficient to support a claim and may be dismissed without a hearing), *cert denied*, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987).

  Having reviewed relevant portions of the trial record, the Court is skeptical that Petitioner could establish deficiency. Even assuming, however, that Petitioner's counsel was deficient in failing to rebut the government's case by stressing or emphasizing the absence of direct evidence, along the lines detailed in Petitioner's amended habeas petition, Petitioner cannot establish prejudice because the overwhelming circumstantial evidence is more than sufficient to sustain Petitioner's convictions on the armed robbery and related weapons charges.

  After the bank robbery, an activated GPS tracking device in the stolen money allowed police to track the location of the money, and the coordinates of the GPS device matched the coordinates of a van driven by Petitioner. *Thompson*, 393 Fed. App'x. at 854. Petitioner led police on a high speed chase and fled on foot after crashing the van. *Id.* The van itself contained the stolen money, the gun used in the robbery, and items worn by the robbers during the robbery. (*Id.*) Contrary to Petitioner's claim, the government also presented expert testimony showing that DNA from the hat and mask worn during the robbery belonged to Petitioner (Crim. No. 08-674, No. 58, Trial Test. of Nicole Nicklow, 335:1-368:25), and a footprint impression on the bank counter corresponded to the shoes worn by Petitioner when he was apprehended. (*Id.* at No. 57, Trial Test. of Michael Scimeca, 253:1-268:12; Trial Test. Michael Smith, 269:1-

298:24.)[5]  This evidence, albeit circumstantial, is more than sufficient to sustain Petitioner's convictions.

The Court notes that Petitioner's habeas petition proceeds from the faulty premise that circumstantial evidence is inherently unreliable and that a conviction can only be sustained by direct evidence.  That argument has been soundly rejected by both the Third Circuit and the United States Supreme Court.  "Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred." *U.S. v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) (citing *United States v. Bycer*, 593 F.2d 549, 551 (3d Cir. 1979)). "The fact that evidence is circumstantial does not make it less probative than direct evidence." *Id.; see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required.") (*Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954) (observing that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence")); *United States v. Giuliano*, 263 F.2d 582, 584 (3d Cir.1959) (holding that circumstantial evidence alone is sufficient to sustain a criminal conviction)).  "And juries are routinely instructed that '[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'"  *Desert Palace*, 539 U.S. at 100 (citing 1A K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions, Criminal § 12.04 (5th ed.2000); 4 L. Sand, J. Siffert, W.

---

[5] Petitioner's suggestion that the weightier evidence suggested that a different person committed the robbery is wholly unsupported.  Given that Petitioner was already permitted to amend his petition once and he subsequently indicated that he wished to have his petition ruled on as submitted (Nos. 5, 8), this Court declines to permit further amendment to address this deficiency.

Loughlin, S. Reiss, & N. Batterman, Modern Federal Jury Instructions ¶ 74.01 (2002) (model instruction 74–2)).

Here, even if Petitioner could establish that his defense counsel did not adequately pursue a reasonable doubt strategy by failing to stress the absence of direct evidence, Petitioner cannot meet the second prong of *Strickland* due to the overwhelming nature of the evidence against him. The fact that the evidence is largely or even wholly circumstantial is of no moment. Thus the instant ground for relief is denied with prejudice.

### B. Failure to Argue for the Statutory Minimum and Downward Departures

In his habeas petition, Petitioner also contends that

> Defense counsel was ineffective at sentencing for failing to argue for a low-end of the guidelines sentence pursuant to 18 U.S.C. § 3553(a) and for not adequately arguing for a downward variance from Petitioner's guideline range due to the various factors articulated in United States sentencing guideline § 5K2.0 and in light of Gall v. United States, 128 S.Ct. 586 (2007), et al.

(No. 5-1, Am. Pet. at 8-9)

From the outset, his position that counsel failed to argue for the low-end of the guidelines is flatly contradicted by the sentencing transcript, which make clear that Petitioner's counsel did argue for the minimum sentence. (October 21, 2009 Sen. Tr. 25:7-12.)

Petitioner also contends that counsel was ineffective because he failed to move for numerous downward departures. Specifically, he contends that counsel should have sought a litany of downward departures, summarized below:

1. Petitioner's criminal history (or lack thereof) overstates his propensity to commit crimes.
2. To enable Petitioner to be eligible for counseling or other rehabilitative Programs
3. Petitioner's manifested "super" acceptance of responsibility[6]
4. Prosecutor's manipulation of the charges

---

[6] Petitioner withdrew this ground in his Reply. (No. 11, Reply, at 7.)

9

      5. Prosecutor's or defense counsel's misconduct prejudiced Petitioner's plea bargaining
      6. Delay in arrest or charge
      7. Petitioner's vulnerability to victimization in prison
      8. Petitioner has extraordinary physical impairment or bad health[7]

(Am. Pet. at 8-23.) As explained by the Third Circuit, "familiarity with the structure and basic content of the Guidelines ... has become a necessity for counsel who seek to give effective representation." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).[8] "[D]epartures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves." *United States v. Gaskill*, 991 F.2d 82, 86 (3d Cir. 1993). The Court of Appeals for the Third Circuit has thus held that "[f]ailure to argue for an appropriate downward departure may constitute ineffective assistance of counsel." *DeJesus v. U.S.*, No. 08-1158, 2008 WL 2945959, at *5 (D.N.J. Jul. 30, 2008) (citing *United States v. Headley*, 923 F.2d 1079, 1083-84 (3d Cir. 1991)); *see also Rolon v. United States*, Civ. No. 03-3902, No. 01-583, 2006 U.S. Dist. LEXIS 58492, at *24 (D.N.J. Aug. 21, 2006). Counsel is not ineffective, however, "for failing to raise every conceivable argument at sentencing, regardless of lack of merit." *Amponsah v. U.S.*, No. 08–114, 2009 WL 900732, at *6 (D.N.J. Apr. 2, 2009); *see also Ross v. District Attorney of the County of Allegheny*, 672 F.3d

---

[7] Petitioner describes this list as "abridged" rather than "exhaustive." (Am. Pet. at 12.) As explained below, because Petitioner states no facts warranting these or other downward departures, the Court declines to consider whether any additional downward departures apply.

[8] Before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 234, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the federal Sentencing Guidelines had "the force and effect of laws." *Booker* "held unconstitutional that portion of the Guidelines that made them mandatory," *Rita v. United States*, 551 U.S. 338, 354, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), "and replaced the mandatory regime with one in which the Guidelines are 'effectively advisory.' "*United States v. Merced*, 603 F.3d 203, 213 (3d Cir. 2010) (quoting *Booker*, 543 U.S. at 245). For a sentence entered after *Booker*, a sentencing court must "'consider the Guidelines range,' pursuant to § 3553(a)(4), but also 'tailor the sentence in light of other statutory concerns' reflected in the sentencing factors of § 3553(a)." *Merced*, 603 F.3d at 213 (quoting *Booker*, 543 U.S. at 245).

198, 211 n. 9 (3d Cir. 2012) ("counsel cannot be deemed ineffective for failing to raise a meritless claim") (quoting *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000)).

With regard to Petitioner's first ground for departure – that his criminal history (or lack thereof) overstates his propensity to commit crimes – it is undisputed that Petitioner had no prior criminal history, a fact repeatedly emphasized by defense counsel at sentencing and noted by the Court. (*See* Tr. 5:11-13.)   As such, Petitioner's criminal history was a category I, the lowest possible category. Under U.S.S.G. § 4A1.3, a downward departure for Criminal History Category I is prohibited. *See id.* (A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited.)  Thus, Petitioner could not have received this particular downward departure.

Petitioner has offered no facts whatsoever to indicate that his counsel was deficient for failing to argue the remaining downward departures.  *See* Rule 2(b) (2) of the rules governing section 2255 proceedings ("[t]he motion must . . . "state the facts supporting each ground" for relief); *Thomas*, 221 F.3d at 437.  Because Petitioner must articulate facts to support his claims for the various downward departures, and because counsel cannot be ineffective for failing to raise every conceivable argument, even if meritless, the instant ground for habeas relief is likewise denied with prejudice.[9]

---

[9] In his Reply brief, Petitioner raises a new argument for relief pursuant to *Missouri v. Frye*, — U.S. ——, ——, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012).  In a conclusory fashion, Petitioner alleges that "defense counsel's failure to fully advise Petitioner of the plea offer that was presented to him by the government prior to trial, as well as the full ramifications of refusing to accept that offer, constituted clear and unquestionable ineffective assistance of counsel." (No. 11, at 11-12.)  Although Petitioner suggests that he could not have raised this issue earlier (No. 11, at 12), he in fact had several earlier opportunities to raise the *Frye* issue.  He filed his amended habeas Petition on June 8, 2012 (Nos. 5-6), several months after the Supreme Court issued its decision in *Frye*.  Subsequently, on August 8, 2012, the Court gave Petitioner notice of his right to amend his petition to include any additional grounds within 30 days under *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999). (No. 8.)  Again, Petitioner did not raise the *Frye*

### C. Certificate of Appealability

Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).  *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's petition is DISMISSED with prejudice and the Court denies a certificate of appealability.

/s/      Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: March 23, 2015

---

issue, but instead responded by letter on August 24, 2012 and stated that he wished to have his petition ruled on as filed.  (No 9.)  The government then filed its Answer on October 19, 2012.  (No. 10.)  By raising a new issue on Reply, Petitioner deprived the government of the opportunity to respond to his arguments.  "Basic fairness requires that an opposing party have a fair notice of his adversary's claims."  *Soto v. U.S.*, No. 04-2108, 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005).  Under these circumstances, the Court declines to consider Petitioner's *Frye* argument at this late date.  *See Rodriguez v. U.S.*, No. 04-158, 2005 WL 2007033, at *9 n7 (D.N.J. Aug. 22, 2005) ("This Court shall not permit Petitioner to incorporate and adopt an additional claim in a reply brief at the eleventh hour, particularly where, pursuant to a *Miller* order from this Court, he was advised that all of his claims must be presented in one § 2255 motion."); *see also United States v. Martin*, 454 F.Supp.2d 278, 281 n3 (E.D. Pa. 2006) (declining to address issues raised for the first time in petitioner's reply to government's opposition to § 2255).